**FIRST SOUTHWEST LLOYDS INSURANCE COMPANY, Appellant,**

v.

**James MacDOWELL and Pauline MacDowell, d/b/a Armstrong McCall Beauty Supply, Appellees.**

No. 9688.

Court of Appeals of Texas, Texarkana.

April 11, 1989.

Rehearing Denied May 9, 1989.

Cynthia L. Stagner, Stagner & Stagner, Sherman, for appellant.

Webb Biard, Rick Standifer, Paris, for appellees.

BLEIL, Justice.

First Southwest Lloyds Insurance Company appeals an adverse judgment on the verdict in a suit filed by James and Pauline MacDowell on a fire insurance policy. The MacDowells sued First Southwest to collect on their policy when it refused their claim, alleging arson. First Southwest contends that the trial court erred in excluding evidence of an earlier fire on other property owned by the MacDowells, and that because the MacDowells failed to secure jury findings regarding the proof of loss requirement, they are precluded from recovery on the policy. We resolve these contentions in favor of the MacDowells and affirm.

On December 22, 1985, fire destroyed the Armstrong–McCall Beauty Supply Company in Paris, which was located in a building leased to the MacDowells. First Southwest insured the contents. Kenneth Bitting, a licensed engineer and certified arson investigator employed by First Southwest, investigated the fire and concluded that it was incendiary in nature. Rick Evans, the City of Paris fire marshal, agreed with Bitting that the fire was set and testified that, in his opinion, the MacDowells had set the fire. The MacDowells' arson expert, Jerry Gilmore, disagreed, and testified to three possible causes of the fire: an electrical mishap in the central heating room, a defect in the central heating unit, or an improper storage of combustible materials in the heating closet.

■ First Southwest contends that the trial court erred in refusing to admit evidence of a fire at the MacDowells' rental property in Fort Worth, which occurred eight months before the fire at their beauty supply business. First Southwest sought to establish the incendiary nature of the Fort Worth fire and the MacDowells' connection to that fire. The trial court excluded this evidence. Generally, evidence of other wrongs or acts is not admissible to prove the character of a person to show that he acted in conformity therewith on a particular occasion. Tex.R.Civ.Evid. 404(a). Prior acts or transactions by one of the parties with other persons are irrelevant, immaterial and highly prejudicial. *Tex. Farm Bur. Mut. Ins. Co. v. Baker*, 596 S.W.2d 639, 643 (Tex.Civ.App.–Tyler 1980, writ ref'd n.r.e.). Evidence of other wrongs or acts may be admissible, however, to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex.R.Civ. Evid. 404(b). Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R.Civ.Evid. 403.

In its offer of proof, First Southwest produced M.J. Standridge of the City of Fort Worth fire department, who testified that he believed the Fort Worth fire to be incendiary, giving the following bases: 1) a certain type of pipe used in the plumbing, ordinarily flame resistant, was obliterated, suggesting that a flammable liquid had been poured down the drain; 2) there was no reason to believe that the fire was electrical in origin because the house was vacant and the electricity was off; and 3) the physical evidence suggested many points of origin of the fire. The evidence linking the MacDowells to the fire at their Fort Worth property consists of statements made to

Standridge by the neighbor who reported the fire. The neighbor told Standridge that Mrs. MacDowell had visited the Fort Worth property the day before the fire and the morning of the fire. No arson charges were filed against the MacDowells.

In addition to Standridge's testimony, First Southwest offered the testimony of James Hall, Aetna's arson investigator. Hall agreed with Standridge's conclusion that the fire was incendiary for two reasons. First, the pipe which had melted requires heat of 1140 degrees, indicating the use of a fire accelerant. Second, Hall identified pour patterns of a fire accelerant. He testified that use of a fire accelerant indicates that the fire did not arise accidentally.

In *Tex. Farm Bur. Mut. Ins. Co. v. Baker*, 596 S.W.2d 639, a case factually similar to the one before this Court, homeowners sued to collect on a fire insurance policy when their insurer denied their claim, alleging arson. The trial court excluded evidence concerning a previous fire loss suffered by the homeowners. The appellate court upheld the exclusion of evidence of the prior fire for these reasons: 1) there was no evidence of any wrongdoing connected with the fire; 2) the homeowner's insurance agent was informed of the fire when the policy in question was purchased; 3) the prior fire was remote in time; 4) the prior fire was an isolated event rather than one of several in a continuing scheme; and 5) the prejudicial effect of the evidence of the prior fire outweighed its relevancy. *Tex. Farm Bur. Mut. Ins. Co. v. Baker*, 596 S.W.2d at 643. In short, the insurance company failed to show a sufficient nexus between the prior fire and the fire in question.

■ Here, the evidence fails to conclusively establish any wrongdoing on the part of the MacDowells regarding the Fort Worth fire. No criminal charges were filed against them. No litigation regarding the fire resulted between the MacDowells and Aetna. The only evidence linking the MacDowells to the Fort Worth fire is the testimony of Standridge, who related the neighbor's remark regarding Pauline MacDowell's visit to the property on the date of the fire. The trial court could have properly determined that an insufficient nexus links the Fort Worth fire to the beauty supply fire, and that the prejudicial effect of admitting evidence of the Fort Worth fire would have outweighed its relevancy. We therefore find no error in the trial court's exclusion of the evidence.

First Southwest also maintains that the trial court erred in excluding testimony by Rick Evans, the Paris fire marshal, concerning a report by an eyewitness of the beauty supply fire, which report served as a partial basis for his conclusion that the fire was incendiary. While the trial court allowed Evans to state that an eyewitness account of the fire by Tommy Hudspeth contributed to his conclusion that the fire was incendiary, it refused to allow Evans to recount before the jury what Hudspeth had told him, namely that he had seen the fire begin from a nightclub across the street from the beauty supply and that a white male ran from the front of the beauty supply and sped away in a vehicle.

First Southwest contends that all testimony by Evans regarding Hudspeth's eyewitness account, related to him, is admissible under Tex.R.Civ.Evid. 703 and 705, because it partially formed the basis for Evans' expert opinion. First Southwest interprets these rules to allow disclosure of Hudspeth's eyewitness account by Evans on direct examination, because Evans' testimony establishes that arson investigators routinely and reasonably rely upon eyewitness accounts in forming their opinions.

■ Rule 703 provides that:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Rule 705 provides that:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data.

In our view of the rule, the use of the permissive word *may* in indicating that the expert "may in any event disclose ... the underlying facts or data" does not indicate an absolute right of the expert to disclose *all* of the facts and underlying data under all circumstances. We conclude that the better judicial position is to not allow the affirmative admission of otherwise inadmissible matters merely because such matters happen to be underlying data upon which an expert relies.

■ While an expert may generally state the basis for his opinion on direct examination, he is not necessarily entitled to state in detail all information that contributed to the formation of his opinion. For example, while an expert in an arson case could properly state that he based his conclusion that a fire was incendiary upon many years of fire investigation training and experience, the physical findings at the fire scene, and reports made to him during the course of the investigation, he would not necessarily be entitled to express all the details of each of the bases of his opinion. If the expert were held to be entitled to detail every statement made to him that contributed to his conclusion, then the expert could be effectively used to present an infinite amount of evidentiary matters to the jury. The rules do not necessarily allow the expert to recount the entire basis of any opinion which may be admissible. Although some courts have allowed the direct admission of all data upon which an expert relies to form an opinion, a much better argument can be made against the admission on direct examination of unauthenticated underlying data. *See, e.g.,* Carlson, *Collision Course in Expert Testimony: Limitations on Affirmative Intro-*

*duction of Underlying Data,* 36 U.Fla.L. Rev. 234, 242 (1984).

■ Moreover, even if we determined that Rule 703 mandated that all facts or data relied on by an expert were *ipso facto* admissible, we believe that the trial court in the exercise of its discretion could exclude these types of matters. Were the appellate courts to adopt the position urged by First Southwest, then we would eliminate the trial court's discretion in limiting the admissibility of any evidence which might be facially admissible. The Texas Rules of Evidence clearly compel that we not adopt this position. Tex.R.Civ.Evid. 403, entitled "Exclusion of Relevant Evidence on Special Grounds," clearly gives the trial court discretion to exclude admissible evidence for a variety of reasons, notwithstanding the earlier provision in Tex.R.Civ.Evid. 402 that *all* relevant evidence is admissible. Rule 403 provides that: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Here, the trial court could have excluded the proffered evidence because it found a danger of unfair prejudice, a danger of confusion, or a danger of undue delay. We find no error in the trial court's ruling which excluded Evans' testimony concerning a part of the basis of his opinion.

■ First Southwest additionally contends that Hudspeth's statement to Evans is admissible under the present sense impression and excited utterance exceptions to the hearsay rule, Tex.R.Civ.Evid. 803(1) and 803(2). These two exceptions exist because statements which fall into these categories are likely to be true. Present sense impressions, those comments made at the time the declarant is receiving the impression, possess the following safeguards which render them reliable: 1) the report at the moment of the thing then seen, heard,

etc. is safe from any error from defect of memory of the declarant; 2) there is little or no time for a calculated misstatement; 3) the statement will usually be made to another—the witness who reports it—who would have equal opportunity to observe and hence to check a misstatement. *Houston Oxygen Co. v. Davis,* 139 Tex. 1, 161 S.W.2d 474 (Com.App.1942).

▉ Excited utterances are those statements made under the stress of excitement caused by the event or condition. Tex.R.Civ.Evid. 803(2). A statement that is simply a narrative of past acts or events, as distinguished from a spontaneous utterance, does not qualify as an excited utterance regardless of how soon after the event that it is made. *Gulf, C. & S.F.R. Co. v. Moore,* 69 Tex. 157, 6 S.W. 631 (1887); *see also McCormick's Handbook of the Law of Evidence* § 297 (E. Cleary 2d ed. 1972). The circumstances must show that it was the event speaking through the person and not the person speaking about the event. *City of Houston v. Quinones,* 142 Tex. 282, 177 S.W.2d 259 (1944). Hudspeth's remarks to Evans constituted a narrative account, given after he had returned to the fire scene after chasing the fleeing vehicle, which qualifies as neither a present sense impression nor an excited utterance.

▉ First Southwest further asserts that the trial court erred in excluding Evans' written report of the fire, which contains a reference to Hudspeth's eyewitness account. Tex.R.Civ.Evid. 803(8) states that public reports concerning matters observed pursuant to a duty imposed by law are admissible as an exception to the hearsay rule unless the sources of information lack trustworthiness. Evans' report of the fire is a public record and therefore meets the hearsay exception of Rule 803(8). However, parts of the report, including Hudspeth's account, do not fall within an exception to the hearsay rule. Multiple hearsay is admissible only if each part of the combined statements fits within an exception to the hearsay rule. Tex.R.Civ.Evid. 805.

The trial court did not err in excluding Evans' report from evidence.

▉ First Southwest contends that the trial court erred in overruling its motion for judgment notwithstanding the verdict because the MacDowells failed to secure the necessary jury findings on waiver or substantial compliance with the proof of loss requirement. Proof of loss is a condition precedent to recovery on an insurance policy. *American Teachers Life Ins. Co. v. Brugette,* 728 S.W.2d 763, 764 (Tex. 1987). The purpose of the proof of loss requirement is to apprise the insurance company of the facts. *Dairyland Cty. Mut. Ins. Co. v. Keys,* 568 S.W.2d 457 (Tex.Civ.App.–Tyler 1978, writ ref'd n.r.e.). Proof as a matter of law of substantial compliance will excuse the failure to submit jury issues on those claims. *American Teachers Life Ins. Co. v. Brugette,* 728 S.W.2d at 764. In the face of a verified denial of proof of loss, the insured has the duty to secure findings to support his theories of waiver or substantial compliance. *Id.* First Southwest accepted the proof of loss supplied by the MacDowells, and did not request additional information.

▉ The MacDowells supplied First Southwest with a complete inventory of the items damaged or destroyed during the fire within one week of the fire. First Southwest's investigator then examined the premises. The MacDowells were not required to formally label the inventory a proof of loss. *See Henry v. Aetna Cas. & Sur. Co.,* 633 S.W.2d 583 (Tex.App.–Texarkana 1982, writ ref'd n.r.e.). The MacDowells supplied First Southwest with sufficient information to evaluate their claim and thereby substantially complied with the proof of loss requirement. When the facts are undisputed on the issues of substantial compliance, then a question of law is presented for the court to decide. *Edwards v. Ranger Insurance Company,* 456 S.W.2d 419 (Tex.Civ.App.–Fort Worth 1970, writ ref'd n.r.e.). We conclude that no jury finding regarding substantial compliance

was needed. Additionally, by failing to present this issue to the trial court in any manner, First Southwest has failed to preserve this complaint for appellate review. Tex.R.App.P. 52(a).

We affirm the trial court's judgment.