**METHODIST HOME a/k/a Methodist Home Co., et al., Relators,**

v.

**The Honorable John McClellan MARSHALL, Respondent.**

**No. 05–91–01583–CV.**

Court of Appeals of Texas,
Dallas.

April 20, 1992.

Schuyler Marshall, J. Carlisle DeHay, Gary D. Elliston, Dallas, J. Frank Kinsel, Jr., Kevin Norton, Fort Worth, for relators.

Neil H. Cogan, Mannette Antill Dodge, Dallas, for respondent.

Before STEWART, MALONEY and KAPLAN, JJ.

## OPINION

MALONEY, Justice.

This mandamus proceeding involves numerous discovery disputes. Relators, Na-man, Howell, Smith & Lee (Naman–Howell), Sue Tamblyn, and Methodist Home, argue that the trial court's order requires disclosure of the names of the adopted children's birth parents in the underlying litigation and the names of third-party birth parents, third-party adoptive parents, and third-party adopted children who are not involved in the underlying proceeding. After review of the discovery requests and the trial court's order, we conclude that relators read both the discovery requests and the trial court's order too broadly. We deny the writ.

## I. BACKGROUND

Anthony and Deborah Martin hired Tamblyn, an attorney with Naman–Howell, to assist them in adopting twin boys from Methodist Home. A court entered a judgment of adoption on September 10, 1980. Thereafter, the twin boys developed unspecified medical and emotional difficulties.

Methodist Home apparently initially rebuffed the Martins' attempt to learn more about the twins' medical and social history. However, in May 1988 and again in early 1990, Methodist Home produced the twins' records. The Martins discovered that the twins had suffered from severe malnutrition and had been hospitalized frequently before their adoption. They also learned that the twins' birth parents used alcohol and drugs. The Martins further discovered that Naman–Howell and Tamblyn represented Methodist Home before, during, and after the time they represented the Martins.

The Martins sued Methodist Home, Naman–Howell, and Tamblyn for breach of fiduciary duties, breach of contract, and negligence.[1] They alleged that Methodist Home wrongfully withheld information about the twins. They also alleged to the extent Methodist Home gave the Martins information, the information was false. The Martins alleged that Naman–Howell and Tamblyn: (1) did not adequately inves-

---

1. The plaintiffs are Anthony and Deborah Martin, individually and as next friends of John Doe, a minor, James Doe, a minor, and Joseph Doe, a minor. "John Doe" and "James Doe" are the twins. "Joseph Doe" is Anthony and Deborah Martin's biological child.

tigate the twins' medical and social histories, and (2) showed a willful or reckless disregard for the Martins by simultaneously representing Methodist Home and the Martins—a conflict of interest.

## II. NATURE OF THE DISCOVERY DISPUTE

On September 9, 1991, the Martins filed three motions to compel discovery on relators. The first motion to compel sought compliance with the Martins' first request for production, items 10 and 11; their second request for production, items 6 and 7; and their third request for production, items 1 and 2. The Martins' second motion to compel sought compliance with interrogatory number 2 of their first set of interrogatories. The Martins' third motion to compel sought answers to numerous deposition questions posed by the Martins. On October 25, 1991, the trial court ordered relators to comply with the motions to compel. Relators seek a writ of mandamus compelling the trial court to vacate the October 25, 1991 order in its entirety.

## III. STANDARD OF REVIEW

### A. INADEQUATE REMEDY AT LAW

■ Mandamus will not lie if a party has an adequate remedy at law. *Walker v. Packer*, 35 Tex.Sup.Ct.J. 468, 472 (Feb. 19, 1992) (orig. proceeding). An order compelling a party to produce privileged matters is reviewable by mandamus, because once a party discloses privileged documents, the privilege cannot be retracted or otherwise protected. *Walker*, 35 Tex.Sup.Ct.J. at 475; *West v. Solito*, 563 S.W.2d 240, 245 (Tex.1978) (orig. proceeding). To the extent relators argue the attorney-client privilege and a constitutional right to privacy, relators show that they have an inadequate remedy at law.

### B. ABUSE OF DISCRETION

The issue before this Court is whether the trial court abused its discretion. Whether a trial court abused its discretion depends in part upon the nature of the underlying order. When the order resolves factual issues or matters committed to the trial court's discretion, reviewing courts must determine whether the trial court could have reached only one decision or whether the trial court's decision was arbitrary and unreasonable; it is not enough that the reviewing court would have decided the issue differently. However, if the order determines legal principles, the trial court has no "discretion" to determine the law or to apply the law to the facts incorrectly. We review the trial court's legal determinations with less deference. *Walker*, 35 Tex.Sup.Ct.J. at 472.

## IV. THE DISCOVERY DISPUTES

### A. THE MARTINS' FIRST REQUEST FOR PRODUCTION, ITEMS 10 AND 11

Relators do not attack the Martins' first request for production, items 10 and 11. The Martins assert that relators no longer object to items 10 and 11. Consequently, we neither consider nor disturb that portion of the trial court's order.

### B. THE MARTINS' SECOND REQUEST FOR PRODUCTION, ITEMS 6 AND 7

#### 1. Item 6

Relators do not attack item 6 of the Martins' second request for production. We do not disturb that portion of the trial court's order.

#### 2. Item 7

Item 7 of the Martins' second request for production asked Methodist Home to produce:

> All correspondence and writings of any description sent to or received from [Naman–Howell], which relate or refer in any manner to any of the [Martins] herein.

Methodist Home asserted the attorney-client privilege. The trial court ordered Methodist Home to produce the documents.

■ In their mandamus petition, relators characterize item 7 as "requesting all writings and correspondence between ...

Methodist Home and [Naman–Howell] which refer or relate to [the Martins] in this cause." Although item 7 encompasses those writings and correspondence, it also encompasses nonprivileged writings and correspondence. The Martins sought correspondence to and from Naman–Howell regarding the plaintiffs. This request includes all communications between Methodist Home and Naman–Howell. If these communications involved legal services and were confidential, then the attorney-client privilege protects them. TEX.R.CIV.EVID. 503(a)(1)–(5). This request also covers communications between Naman–Howell and third parties, such as hospitals or social workers, that Naman–Howell forwarded to Methodist Home. The Methodist Home attorney-client privilege would not protect these third-party communications with Naman–Howell. *See Colton v. United States*, 306 F.2d 633, 639–40 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *Jordan v. Fourth Court of Appeals*, 701 S.W.2d 644, 648 (Tex.1985) (orig. proceeding). Finally, item 7 encompasses communications between Methodist Home and third parties that Methodist Home forwarded to Naman–Howell. Methodist Home cannot cloak these communications behind the attorney-client privilege by giving them to its attorney. *Colton*, 306 F.2d at 639; *see* 8 J. WIGMORE, EVIDENCE § 2307 (McNaughten rev. 1961); 1 R. RAY, TEXAS LAW OF EVIDENCE § 425 (Texas Practice 3d ed. 1980).

■ Rule 166b(4) of the Texas Rules of Civil Procedure provides, in pertinent part:

In objecting to an appropriate discovery request ..., a party seeking to exclude any matter from discovery on the basis of an exemption or immunity from discovery, ... at or prior to any hearing shall produce *any evidence necessary to support such claim* either in the form of affidavits served at least seven days before the hearing or by testimony. If the trial court determines that an in camera inspection and review by the court of some or all of the requested discovery is necessary, the objecting party must segregate and produce the discovery to the court in a sealed wrapper....

TEX.R.CIV.P. 166b(4) (emphasis added). Our record does not show that Methodist Home produced any evidence to support its claim that the documents the Martins sought were protected by the attorney-client privilege. Relators filed an affidavit in this Court that asserted that neither relators nor the Martins presented any evidence at the hearing on the Martins' motions to compel.[2] Without any evidence, the trial court could not determine which communications were protected by the asserted attorney-client privilege. Relators must produce some evidence to support their claim that the Methodist Home attorney-client privilege protected the disputed documents because not all the communications sent to or received from Naman–Howell that referred to the Martins were necessarily protected by the attorney-client privilege. By failing to produce any evidence to support their attorney-client privilege claim, relators waived it. *Peeples v. Fourth Court of Appeals*, 701 S.W.2d 635, 637 (Tex.1985) (orig. proceeding); *Giffin v. Smith*, 688 S.W.2d 112, 114 (Tex.1985) (orig. proceeding) (per curiam).

We hold that the trial court acted within its discretion by ordering relators to comply with item 7 of the Martins' second request for production.

2. Actually, Tamblyn filed a response to the Martins' motion to compel production of documents, motion to compel answers to the first set of interrogatories, and motion to compel answers to deposition questions. Attached to these three responses is one affidavit signed by Tamblyn. None of the responses or Tamblyn's affidavit addresses the Martins' second request for production. Methodist Home filed one response to the Martins' three motions to compel that contained four affidavits. Three of the affidavits addressed whether Methodist Home had voluntarily disclosed confidential information and the fourth affidavit (a second affidavit by Tamblyn) addressed the attorney-client privilege on the deposition questions. None addressed the Martins' second request for production. The Martins also state that the trial court examined other exhibits that were part of the trial court's file at the hearing on the Martins' three motions to compel.

## C. THE MARTINS' THIRD REQUEST FOR PRODUCTION

The Martins' third request for production, directed to Methodist Home, asked for:

1. All documents and/or tangible things which relate or refer in any manner to Plaintiffs John and James Doe, their birthparents, any siblings they have or had, and any foster parents they had. Because the names of the birthparents and foster parents are known to [the Martins] as a result of the Methodist Home's failure to excise those names from a prior production of documents, [the Martins] request production of the above-described documents *in their original form.*

2. All documents containing information required to be disclosed pursuant to TEX.FAM.CODE ANN. 16.032. Because the names of the birthparents and foster parents are known to [the Martins] as a result of the Methodist Home's failure to excise those names from a prior production of documents, [the Martins] request production of the above-described documents *in their original form.*

Methodist Home filed a lengthy objection and motion for protective order. In responding to item 1, Methodist Home asserted a constitutional right of privacy. It also contended that the request constituted an abuse of discovery, was oppressive, imposed an undue burden, and would cause unnecessary expense. Because Methodist Home maintained that it already had produced the relevant documents, it further argued that the Martins propounded item 1 for purposes of harassment and annoyance. Additionally, Methodist Home complained that item 1 was overly broad, not relevant or material, and not reasonably calculated to lead to the discovery of admissible or relevant evidence. Finally, Methodist Home asserted that item 1 was vague.

Methodist Home argued that item 2 called solely for a legal conclusion, was not relevant or material, and was overly broad, vague, and ambiguous. Methodist Home also maintained it did not have to comply with section 16.032 of the Texas Family Code, which requires disclosure of certain medical and social reports, because that statute did not exist in 1980. Methodist Home also asserted that it had already complied with item 2 and that item 2 was an abuse of discovery, was oppressive, imposed an undue burden, would occasion unnecessary expenses, and was propounded for purposes of harassment and annoyance.

The trial court ordered:

[I]t is further ORDERED that Defendant Methodist Home produce [the Martins'] Third Request for Production, with the proviso *as to all documentation produced pursuant to this order* that Defendant Methodist Home may delete the names, addresses and social security numbers of the birthparents and *other* relatives of the birthparents *specified in the Texas Family Code; ....*

(Handwritten interlineations emphasized.)

■ Although section 16.032 did not exist in 1980, relators have not explained why the Martins cannot now rely upon it. Nothing in section 16.032 suggests that its application was prospective only. *See Industrial Found. v. Industrial Accident Bd.,* 540 S.W.2d 668, 677–78 (Tex.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). To the contrary, the historical note to section 16.032 provides: "This Act applies to adoptions consummated before, on, or after the effective date of this Act." TEX.FAM.CODE ANN. § 16.032 Historical and Statutory Notes, 1989 Legislation (Vernon Supp.1992). Section 16.032 governs what information Methodist Home must provide the Martins, despite the fact that section 16.032 was not yet enacted in 1980. *See Griffith v. Johnston,* 899 F.2d 1427, 1431 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).

The Martins assert that section 16.032 of the Texas Family Code directs child-placement agencies to disclose birth parent information and records. The Martins characterize section 16.032 as a full-disclosure law, not a confidentiality law. TEX.FAM. CODE ANN. § 16.032(a)–(e) (Vernon Supp. 1992).

Although section 16.032 provides for disclosure, it also limits that disclosure. The Family Code elsewhere provides:

It shall be the duty of the person or entity placing the child for adoption to edit the records and information to protect the identity of the biological parents and any other person whose identity is confidential.

TEX.FAM.CODE ANN. § 16.09(c) (Vernon Supp.1992); *see also* TEX.FAM.CODE ANN. § 16.032(f) (Vernon Supp.1992).

■ The issue of the applicability of section 16.032 is moot. In 1988 and again in 1990, Methodist Home produced records to the Martins that repeatedly disclosed the identity of the twins' birth parents, sister, and grandparents. Relators deny that they voluntarily disclosed the identities of these persons. The trial court impliedly determined that the disclosures were voluntary and not the result of accident, mistake, or inadvertence. *See Eloise Bauer & Assoc. v. Electronic Realty Assoc., Inc.*, 621 S.W.2d 200, 204 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.). The Martins have provided this Court a copy of the records that Methodist Home produced to them and that the trial court reviewed at the October 18, 1991 hearing on the Martins' motions to compel. This Court may not grant a petition for writ of mandamus that would require contrary findings of fact. *See Packer v. Fifth Court of Appeals*, 764 S.W.2d 775, 776 (Tex.1989) (orig. proceeding); *West*, 563 S.W.2d at 245. Having reviewed the records provided by the Martins, we hold that the trial court acted within its discretion.

Relators argue that Methodist Home could not waive the attorney-client privilege because the privilege belonged to the birth parents, their families, and the foster parents. *See Burnett v. State*, 642 S.W.2d 765, 770 (Tex.Crim.App.1982); *see also Bearden v. Boone*, 693 S.W.2d 25, 27–28 (Tex.App.—Amarillo 1985, orig. proceeding). Regardless of whether Methodist Home had the right to waive the privilege, it possessed the information and disclosed it voluntarily, so the issue is now moot. Once privileged information is disclosed, it cannot be retracted or otherwise protected. *See West*, 563 S.W.2d at 245. To the extent that the trial court ordered other information disclosed, these disclosures are sanctioned by section 16.032 of the Texas Family Code.

### D. INTERROGATORY NO. 2

Also on September 9, 1991, the Martins filed a motion to compel answers to interrogatories on Naman–Howell and Tamblyn. The motion sought to compel compliance with the following interrogatory:

*[The Martins'] First Set of Interrogatories*

Interrogatory No. 2

a. State whether you have represented the Methodist Home in connection with the termination of parental rights of a child's birthparents; the grant of managing or possessory conservatorship (whether temporary or permanent) of a child to the Methodist Home; and/or the placement or adoption of a child in the conservatorship of the Methodist Home (hereinafter any such child is referred to as "the subject child").

b. If the answer to "a" is affirmative, state whether you have represented the subject child or any other person having an interest or seeking an interest in the subject child (hereinafter "a second client") with respect to any legal matter affecting the subject child.

c. If the answer to "b" is affirmative, identify with respect to each subject child the nature of your representation of the Methodist Home and the nature of your representation of the subject child and/or a second client. [The Martins] will agree with [Naman–Howell and Tamblyn] to an appropriate protection for the identity of the subject children.

To comply with subpart c, Naman–Howell and Tamblyn would have to identify, with respect to each subject child (with appropriate protection for the identity of the subject child), the nature of their representation of Methodist Home and the subject child and/or the second client. Because subpart b refers to persons having an interest or seeking an interest in the child, "the

second client" would be the birth parents, the adoptive parents, or both. Subpart c does not obligate relators to identify the subject child, the birth parents, or the adoptive parents.

Naman–Howell and Tamblyn responded as follows:

INTERROGATORY NO. 2:

a. Yes.

b. Yes.

c. The nature of the representation of Methodist Home was to terminate parent-child relationship and request for Methodist Home to be appointed managing conservator; with respect to the nature of the representation of the subject child, subject child was/were not represented by [Naman–Howell and Tamblyn]: the nature of the representation of the second client was in a petition for adoption.

SUPPLEMENTAL ANSWER:

[Naman–Howell and Tamblyn] object to the identification of any subject child or "a second client" for the reason that the information sought is not relevant or material to any issue in this case and is not reasonably calculated to lead to the discovery of admissible evidence; in the alternative, [Naman–Howell and Tamblyn] object for the reason that the interrogatory is not limited as to time and is therefore overly broad and would constitute a fishing expedition under the discovery rules.

The trial court ordered:

[I]t is therefore, ORDERED that [Naman–Howell] and [Tamblyn] answer Interrogatory No. 2 of [the Martins'] First Set of Interrogatories for *each and every* "subject child and/or second client" for the period 1980 to the present; ....

(Emphasis original.)

A strict reading of interrogatory 2(c) and the objections thereto reveals there are only two questions: whether the interrogatory is reasonably calculated to lead to the discovery of admissible evidence; and whether it is overly broad.

In their mandamus petition, relators argue that the attorney-client privilege, as construed in *Enos v. Baker*, 751 S.W.2d 946, 949 (Tex.App.—Houston [14th Dist.] 1988, orig. proceeding), protects the identity of Naman–Howell and Tamblyn's other clients. Relators argue that the trial court's order compels them to disclose the names of third-party birth parents, adoptive parents, and adopted children. Relators read the trial court's order too broadly. The trial court's order only compels relators to answer interrogatory number 2. Interrogatory number 2 requires relators to identify only the *nature* of their representation of the third-party birth parents, adoptive parents, and adopted children, not their identities. Interrogatory number 2 also protects the identity of the subject children. The trial court's order does not abrogate that protection. Because interrogatory number 2 does not require Naman–Howell and Tamblyn to disclose the identity of their other clients, Naman–Howell and Tamblyn's argument is inapposite.

■ Naman–Howell and Tamblyn further argue in their mandamus petition that, based upon *Enos*, the attorney-client privilege protects their client files in their entirety. Because Naman–Howell and Tamblyn's response and supplemental answer to interrogatory number 2 fail to raise the attorney-client privilege, we hold that they have waived that objection. *See Hobson v. Moore*, 734 S.W.2d 340, 341 (Tex.1987) (orig. proceeding).

1. Not Relevant or Material to Any Issue and Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence

■ Rule 166b provides the scope of discovery for interrogatories:

**Scope of Discovery.** ... [T]he scope of discovery is as follows:

a. *In General.* Parties may obtain discovery regarding any matter which is relevant to the subject matter in the pending action whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. It is not ground for objection that the information sought will be inadmissible at the trial if the informa-

tion sought appears reasonably calculated to lead to the discovery of admissible evidence. ...

Tex.R.Civ.P. 166b(2)(a); *see also* Tex. R.Civ.P. 168(2). Courts liberally construe the "relevant to the subject matter" and "reasonably calculated to lead to admissible evidence" tests to allow the litigants to obtain the fullest knowledge of the facts and issues before trial. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex.1990) (orig. proceeding). If the information appears reasonably calculated to lead to the discovery of admissible evidence, it does not matter that the information sought may be inadmissible at trial. *Id.*

Relators cite two cases for the proposition that the burden is on the moving party to both plead and prove the relevancy of the information sought. *Durham v. Cannan Communications, Inc.*, 645 S.W.2d 845, 847 (Tex.App.—Amarillo 1982, writ dism'd w.o.j.); *Bryan v. General Elec. Credit Corp.*, 553 S.W.2d 415, 419 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ). These cases relied on an earlier version of rule 167 and a now-repealed rule 186a. *See Overstreet v. Home Indem. Co.*, 747 S.W.2d 822, 825 (Tex.App.—Dallas 1987, writ denied). Rule 167 of the Texas Rules of Civil Procedure formerly provided: "Upon motion of any party *showing good cause therefor* ... the court ... may order any party: (1) to produce [documents]...." Tex.R.Civ.P. 167 (Vernon 1976) (emphasis added), *amended* Tex.R.Civ.P. 167 Historical Note, 1981 Amendment (Vernon Supp. 1992); *see Overstreet*, 747 S.W.2d at 825. The present introductory language of rule 167 has deleted the "showing-good-cause" requirement. Tex.R.Civ.P. 167. The Supreme Court of Texas affirmatively shifted the burden to the party resisting discovery to show the sought-after items are not discoverable. *See Peeples*, 701 S.W.2d at 637.

Relators also cite *First Southwest Lloyds Insurance Co. v. MacDowell*, 769 S.W.2d 954, 957 (Tex.App.—Texarkana 1989, writ denied), for the proposition that the proponent of the evidence carries the burden to first show how the evidence is relevant. This case is distinguishable.

The issue in *MacDowell* was not whether the evidence was discoverable, but whether the evidence was admissible at trial. *Id.* at 956–57. The court held that the proponent of the evidence failed to show how the evidence was relevant; therefore, the trial court properly excluded the evidence. *Id.* at 957. The other two cases relators cite, *Group Hospital Services, Inc. v. Daniel*, 704 S.W.2d 870, 879–80 (Tex.App.—Corpus Christi 1985, no writ), and *Texas Farm Bureau Mutual Insurance Co. v. Baker*, 596 S.W.2d 639, 643 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.), also address the admissibility of evidence at trial, not the pretrial discovery of evidence.

Reviewing the Martins' arguments clarifies why they believe the interrogatory appears reasonably calculated to lead to the discovery of admissible evidence. In their brief in support of their motion to compel, the Martins argued that they needed the information to determine Naman–Howell's process and pattern when representing multiple parties. The Martins explained in their answer to relators' petition for writ of mandamus that Tamblyn could not recall whether she informed them that Naman–Howell also represented Methodist Home and that the Martins needed the names of other adoptive parents to learn whether Naman–Howell attorneys had a habit of telling the adoptive parents that Naman–Howell also represented Methodist Home.

Based upon the Martins' brief in support of their motion to compel and the Martins' answer to relators' petition, it appears that the Martins want this information to establish Naman–Howell and Tamblyn's habits. By determining what Naman–Howell and Tamblyn did with other clients, the Martins seek to prove what Naman–Howell and Tamblyn did with respect to them. The Martins deny trying to prove a pattern and practice of wrongdoing.

Relators argue that other acts are not admissible; therefore, this interrogatory is irrelevant and immaterial and is not reasonably calculated to lead to the discovery of admissible evidence. The Supreme Court of Texas has held that "evidence of similar

transactions or *conduct on other occasions* is not competent to prove the commission of a particular act charged *'unless the acts are connected in some special way, indicating a relevancy beyond mere similarity in certain particulars.'"* *Dallas Ry. & Terminal Co. v. Farnsworth,* 148 Tex. 584, 227 S.W.2d 1017, 1020 (1950) (emphasis in original). In *Farnsworth,* because the other acts occurred within ten minutes of the act in question, the court held that the other acts were not "conduct on other occasions." *Farnsworth,* 227 S.W.2d at 1020. Additionally, the court determined that the other acts were admissible to show state of mind. *Id.*

The information the Martins seek may not be admissible for the reasons stated. Admissibility is not the test. *Axelson, Inc.,* 798 S.W.2d at 553. The issue is whether the information sought is reasonably calculated to lead to admissible evidence. *Id.* The *Farnsworth* opinion illustrates that the court might admit the information for other reasons. The information might prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R.CIV. EVID. 404(b). Therefore, when the trial court determined that the request was reasonably calculated to lead to admissible evidence, it acted within its discretion. *See Walker,* 35 Tex.Sup.Ct.J. at 470–71; *cf. Russell v. Young,* 452 S.W.2d 434, 435 (Tex.1970) (orig. proceeding) (discovery for purposes of impeaching a nonparty witness).

### 2. Requests are Overbroad

■ Relators also argue that these requests are overbroad. *General Motors Corp. v. Lawrence,* 651 S.W.2d 732, 734 (Tex.1983) (orig. proceeding); *Lunsmann v. Spector,* 761 S.W.2d 112, 113–14 (Tex. App.—San Antonio 1988, orig. proceeding); *Durham,* 645 S.W.2d at 847; *Bryan,* 553 S.W.2d at 419. The trial court ordered relators to answer the interrogatory for each and every subject child and/or second client from 1980 until the present. This is an area committed to the trial court's discretion. Although this Court might have decided the scope differently, relators have

not shown that the trial court acted arbitrarily and unreasonably. *Walker,* 35 Tex. Sup.Ct.J. at 472. Relators produced no evidence at the hearing that would have assisted the trial court in determining the number of cases involved. In the absence of additional information, we hold that the trial court acted within its discretion by resolving any uncertainty—an uncertainty that only relators could clarify—in the Martins' favor.

### E. THE DEPOSITION QUESTIONS

The Martins took Tamblyn's deposition on July 23, 1991. Tamblyn refused to answer certain questions, and the Martins filed a motion to compel on September 9, 1991. The Martins did not expressly state in the motion which questions they wanted answered. Instead, they simply attached eighteen pages of the deposition to the motion. The trial court ordered:

[I]t is further ORDERED that [Tamblyn] answer the questions asked of her on pages 28, 31, 104, 198, 200, 222, 223, 224, 227 and 228 of her deposition; ....

Because the deposition pages were not continuous, and because the questions themselves were not self-explanatory, the parties forced both the trial court and this Court to reconstruct the questions contextually.

Relators identify three types of questions to which they do not want to respond: (1) the number of clients (other than Methodist Home) for whom Naman–Howell terminated parental-rights; (2) inquiries into three termination-of-parental-rights cases where Methodist Home, Naman–Howell, and Tamblyn subsequently placed the same children for adoption; and (3) communications between Methodist Home and Tamblyn regarding the present lawsuit.

1. The Identification and Enumeration of Clients Other than Methodist Home for Whom Naman–Howell Terminated Parental Rights

The questions on pages twenty-eight and thirty-one of the Tamblyn deposition correspond to those queries that relators allege

would require Tamblyn to identify and enumerate those clients (other than Methodist Home) for whom Naman–Howell terminated parental rights.

On page twenty-eight of the deposition, the Martins' counsel asked, "Do you remember for which clients you began to do that kind of work?" In the context of the other questions, counsel asked Tamblyn whether she could identify clients for whom she had terminated parental rights. Relators objected on the grounds that the information was proprietary, belonged to Naman–Howell, and was not relevant or material. Relators abandoned their proprietary argument on mandamus.

We conclude that discovery on the number and nature of Naman–Howell's representation of other birth parents and adoptive parents may lead to admissible evidence. Our rationale regarding interrogatory number 2 applies to the question on page twenty-eight of the Tamblyn deposition.

■ Relators argue the attorney-client privilege protects the other birth parents' identities; however, relators did not object on that ground at the deposition or in response to the Martins' motion to compel answers to deposition questions. We hold that relators waived that objection.

On pages thirty and thirty-one, counsel asked Tamblyn:

Q. Did you at any time from 1977 until the time that you left [Naman–Howell] do such work, namely the termination of parental rights, for clients other than the Methodist Home?

A. Yes.

Q. Okay. Can you approximate how many such other clients?

A. No, sir.

.    .    .    .    .

Q. At least one other?

A. Oh, yes.

Q. At least two other[s]?

Relators objected that Tamblyn already had answered the question, and that any further answer would be speculative and not based upon personal knowledge. Regardless of how Tamblyn answers, any er-

ror could be corrected on appeal. Relators are not asserting a privilege that, once disclosed, is forever lost. *Walker*, 35 Tex. Sup.Ct.J. at 475. Neither would it prevent relators from obtaining a proper record. *Id.*

### 2. Inquiries into Three Specific Cases Extrinsic to the Subject Matter of the Present Lawsuit

■ The questions on pages 104, 198, and 200 of the deposition are inquiries into three specific cases extrinsic to the present lawsuit's subject matter. These three cases involve parental rights terminations and Methodist Home, Naman–Howell, and Tamblyn's subsequently placing the same children for adoption.

On page 104 of the deposition, counsel for the Martins asked Tamblyn:

Q. Can you identify that case? [A particular case in which the adoptive parents knew there was a contested involuntary termination proceeding.]

Relators asserted the attorney-client privilege.

On page 198, counsel asked Tamblyn:

Q. Can you tell me in what other case [besides the twins' birth parents' case] you would have disclosed that to adoptive parents? [That she represented Methodist Home in connection with the termination of parental rights.]

[TAMBLYN'S ATTORNEY]: Now, I'm going to object to identifying any other parties or any other case—

[THE MARTINS' ATTORNEY]: All right.

On page 200, counsel posed the following question:

Q. You cannot even in a general way describe the circumstances that caused you to have the client [in a termination of parental rights proceeding] fill out a written waiver [in connection with your earlier or concurrent representation of Methodist Home]?

Relators asserted the attorney-client privilege.

Relators argue that the attorney-client privilege protects this information. *West,*

563 S.W.2d at 245; *Enos,* 751 S.W.2d at 948–49; *Dewitt & Rearick, Inc. v. Ferguson,* 699 S.W.2d 692, 693 (Tex.App.—El Paso 1985, orig. proceeding); *Bearden,* 693 S.W.2d at 27–28. We disagree.

██ The attorney-client privilege protects confidential communications, not information. *United States v. O'Malley,* 786 F.2d 786, 794 (7th Cir.1986); Tex.R.Civ. Evid. 503(b) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications...."); *see MortgageAmerica Corp. v. American Nat'l Bank,* 651 S.W.2d 851, 858 (Tex.App.—Austin 1983, writ ref'd n.r.e.) (communications privileged, not underlying facts). The questions do not ask Tamblyn to disclose confidential communications. A "yes" or "no" will answer all three questions.

Relators argue that the attorney-client privilege protects the identity of Naman–Howell and Tamblyn's other clients. None of the questions required Tamblyn to disclose third-party birth or adoptive parents' identities. Relators' argument is premature. We decline to respond to it.

Relators argue that birth and adoptive parents have a constitutional right to privacy. *See Industrial Found.,* 540 S.W.2d at 678–80 & 682; *McGregor v. Gordon,* 442 S.W.2d 751, 758 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.); Tex.Fam.Code Ann. § 16.032(f) (Vernon Supp.1992). Because the questions do not require relators to disclose birth and adoptive parents' identities, we hold that relators have prematurely raised that argument. We decline to address it.

3. Communications by Methodist Home Representatives with Tamblyn Regarding the Subject Matter of the Present Lawsuit

██ Relators maintain that the Martins asked Tamblyn questions about communications between Methodist Home and Tamblyn regarding the subject matter of this litigation on pages 222, 223, 224, 227, and 228 of the deposition. Relators contend that the attorney-client privilege protects these answers.

On page 222 of the deposition, counsel for the Martins asked:

Q. All right. Are you able to describe what that was? [An unidentified inquiry at Methodist Home in 1987.]

Relators asserted the attorney-client privilege.

On page 223, counsel asked:

Q. Did any matter, inquiry, file come into the firm beginning January of '81 through October of '88 relating to the children identified as John and James Doe?

A. I think the answer is the same. [Tamblyn would admit that there was an inquiry and that the inquiry occurred in 1987, but she would not say by whom or regarding what.]

Relators asserted the attorney-client privilege.

On pages 224–25, counsel asked:

Q. Okay. So it's the same set of responses. It's 1987, but otherwise you refuse to answer upon the advice of counsel?

A. [Yes.] [Relators asserted the attorney-client privilege.]

. . . . .

Q. Beginning in January of '81 through October of '88 did some matter, inquiry, file come into the firm relating to Anthony and/or Deborah Martin?

A. Yes.

Q. All right. I take it that it's 1987. [That is, that the 1987 inquiry discussed above was the Martins' inquiry.] The same refusal to answer upon the advice of counsel?

A. I refuse to answer on the advice of counsel, yes, sir.

[Relators raised the attorney-client privilege.]

On page 227, the questioning continued:

Q. All right. So you're refusing to answer that question as to who might possess these documents that would refresh your recollection?

A. Yes. ...

[Relators asserted the attorney-client privilege.]

On page 228, counsel asked related questions:

Q. Do you know whether sometime after September 1980 and prior to April 10, 1988, the Martins, one or both of them, requested information of the Methodist Home regarding the children that they had adopted?

[Relators asserted the attorney-client privilege.]

Only if Tamblyn received the inquiry from Methodist Home does relators' attorney-client privilege objection preserve error. If the inquiry came from some source other than Methodist Home, then the Methodist Home attorney-client privilege would not protect that communication. *See Colton*, 306 F.2d at 639–40; *Jordan*, 701 S.W.2d at 648. The Martins made an inquiry upon Methodist Home in 1987. Revealing that Methodist Home communicated with Naman–Howell in 1987 about the Martins' inquiry would not disclose the content of any confidential communications. Tex.R.Civ.Evid. 503(a)(5). Furthermore, Tamblyn, in her affidavit supporting her response to the Martins' motion to compel answers to deposition questions, admits that Methodist Home contacted her in 1987 or 1988. Her affidavit states:

In approximately 1987 or 1988, I had conversations with a representative of Methodist Home which were referenced in my deposition. In these conversations, a representative of Methodist Home requested legal advice from me and I gave legal advice and provided legal services to Methodist Home in response to such requests.

Tamblyn, in her affidavit filed in support of Methodist Home's response to the Martins' motion to compel answers to interrogatories, also admits that Methodist Home contacted her in late 1987 or early 1988 regarding "certain matters which are the subject of this lawsuit." Even without Tamblyn's admissions, we fail to see how disclosing the fact that a contact occurred in 1987 reveals the substance of any confidential communications. We hold that the trial court acted within its discretion by ordering Tamblyn to answer the questions.

## V. SUPPLEMENTAL EVIDENCE

After submission, the Martins twice attempted to supplement the mandamus record with evidence that was not before the trial court when it made its ruling. We denied the Martins' motions for leave to file the supplemental evidence. In a mandamus proceeding, a reviewing court should consider only the evidence that was before the trial court when it made its rulings. A mandamus proceeding is not a hearing *de novo* on the parties' motions and responses. *See Bellair, Inc. v. Aviall of Texas, Inc.*, 819 S.W.2d 895, 898 (Tex.App.—Dallas 1991, writ denied); *Deerfield Land Joint Venture v. Southern Union Realty Co.*, 758 S.W.2d 608, 610 (Tex.App.—Dallas 1988, writ denied).

## VI. CONCLUSION

We have reviewed the Martins' discovery requests, relators' objections thereto, the trial court's order, and relators' petition for writ of mandamus. We hold that the trial court acted within its discretion. We deny relators' petition for writ of mandamus.