**In re Jeanie NOLLE and Technical Solutions, Inc., Relators.**

No. 01–07–01065–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 12, 2008.

James Michael Baker, Castro & Baker, L.L.P., Las Vegas, NV, for Relator.

Suzanne R. Chauvin, Strong Pipkin Bissell & Ledyard, L.L.P., Houston, TX, Real Parties in Interest.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

Relators, Jeanie Nolle and Technical Solutions, Inc. ("TSI"), filed a petition for writ of mandamus seeking to challenge the trial court's November 14, 2007 discovery orders in favor of real parties in interest Cheryl Kerry and Full Staff, Inc. ("Full Staff").[1] TSI complains that (1) requests for production of correspondence between TSI and three particular technicians and for production of any documents referring to Kerry were overbroad and (2) requests for production of documents and depositions relating to a lawsuit between Nolle and her former employer were not relevant or reasonably calculated to lead to the discovery of admissible evidence.

We grant in part and deny in part.

## Background

Nolle is the owner, president, and CEO of TSI. Kerry began working for TSI in August and signed a contract that included confidentiality and non-competition provisions. TSI terminated Kerry's employment in September 2005. In 2006, TSI discovered that Kerry was operating a competing business, Full Staff.

TSI filed suit against Kerry and Full Staff in February 2007, alleging breach of the confidentiality and non-competition clauses of the contract, misappropriation of trade secrets, including misappropriation of a recruiting database, common law misappropriation, tortious interference with a contract, conversion, civil conspiracy and violations of the Theft Liability Act.[2] Full Staff filed a general denial and alleged the affirmative defenses of failure of consideration, waiver, unclean hands and estoppel. Full Staff also filed counterclaims against TSI for defamation, business disparagement, tortious interference with a prospective contract, and attorney's fees and for a declaratory judgment that the non-competition agreement is not valid or enforceable or, alternatively, that it is overbroad. Full Staff also made a claim for attorney's fees under section 15.51(c) the Texas Business and Commerce Code.[3]

Some of Full Staff's affirmative defenses and counterclaims arise out of its knowledge of litigation between Nolle and her previous employer, Medical Staffing Network ("MSN"). Nolle first began working for MSN when that company bought Nolle's then employer, Staff Relief, Inc.

1. The underlying lawsuit is *Technical Solutions, Inc. v. Cheryl R. Kerry and Full Staff, Inc.*, Cause No.2007–06188, in the 113th District Court of Harris County, Texas.

2. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 134 (Vernon 2005) (making a person who commits theft liable for damages resulting from theft, including actual damages, additional damages not to exceed $1,000, and reasonable costs and attorney's fees).

3. *See* TEX. BUS. & COM.CODE ANN. § 15.51(c) (Vernon 2002).

Nolle's employment with MSN was terminated in 1999, and she started TSI in January 2000. Once Nolle started TSI, MSN filed a lawsuit against her in Florida claiming misappropriation of trade secrets ("Florida lawsuit"). In March 2000, Nolle filed a declaratory action against MSN, which sought to establish that her non-competition agreement with MSN was unenforceable in Dallas. The Florida case was dismissed due to lack of personal jurisdiction over Nolle in 2001. The parties entered into a confidential settlement agreement in August 2002, which resulted in MSN and Nolle dismissing all remaining claims against each other.

In July 2007, Full Staff made the following requests for production:

REQUEST FOR PRODUCTION NO. 8: Please produce a copy of the original and amended petitions and answers filed in the Florida lawsuit brought by MSN against [Nolle] and/or TSI.

REQUEST FOR PRODUCTION NO. 9: Please produce the transcript of any deposition testimony given by [Nolle] in the Florida lawsuit brought by MSN against [Nolle] and/or TSI.

REQUEST FOR PRODUCTION NO. 10: Please produce a copy of any affidavit signed by [Nolle] in the Florida lawsuit brought by MSN against [Nolle] and/or TSI.

REQUEST FOR PRODUCTION NO. 11: Please produce a copy of the non-competition agreement [Nolle] signed with MSN.

REQUEST FOR PRODUCTION NO. 12: Please produce copies of correspondence between TSI and/or [Nolle] and Sonny Khan.

REQUEST FOR PRODUCTION NO. 13: Please produce copies of correspondence between TSI and/or [Nolle] and Rickey Griffith.

REQUEST FOR PRODUCTION NO. 14: Please produce copies of correspondence between TSI and/or [Nolle] and Kim Rose.

REQUEST FOR PRODUCTION NO. 15: Please produce copies of any document referring to [Kerry].

TSI objected to requests for production 12–15, claiming that the requests were overbroad because they were not limited in time and scope or to subject. TSI objected to requests for production 8–11, claiming that documents from the Florida case were not relevant to the current case and that the requests were not calculated to lead to admissible evidence, and they were designed to harass and needlessly increase the cost of litigation.

In October 2007, Full Staff filed requests for letters rogatory compelling the deposition of Patricia Donohoe, an employee of MSN who was involved in the Florida lawsuit, and for deposition on written questions to MSN. In the subpoena requiring MSN's custodian of records to appear at the deposition, Full Staff requested that MSN produce all correspondence sent to or received from Nolle, any contracts or agreements entered into by MSN and Nolle, all court pleadings or documents filed by or served on MSN in the Florida lawsuit, and all correspondence between MSN's and Nolle's counsel of record in the Florida case.

TSI objected to these requests for depositions, claiming details of the Florida suit are not relevant to the present case and the Florida documents and depositions are not reasonably calculated to lead to the discovery of admissible evidence. TSI requested a hearing on its objection to the depositions. The trial court set a submission date of November 23, 2007 for a hearing on TSI's objection.

On November 14, 2007, the trial court issued an order compelling the production

of the documents Full Staff requested in requests for production 8–15 and two orders approving the requested depositions. An oral hearing was held on November 26, 2007, during which the trial court confirmed its orders of November 14, 2007.

Nolle filed this petition for writ of mandamus, requesting that we order the trial court to vacate all of the November 14, 2007 orders and sign an order denying the requested discovery, or that we grant any other relief to which TSI is entitled.

**Requests for Production 12–15**

*Standard of Review*

■ Mandamus relief is appropriate only if a trial court abuses its discretion and no adequate appellate remedy exists. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex.2003). The heavy burden of establishing an abuse of discretion and an inadequate appellate remedy is on the party resisting discovery. *Id.* A trial court commits a clear abuse of discretion when its action is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996)).

■ The scope of discovery is largely within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (citing *Dillard Dept. Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995)). Texas Rule of Civil Procedure 192.3 allows a party to "obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." TEX.R. CIV. P. 192.3(a). The comments to Rule 192 further state, however, "While the scope of discovery is quite broad, it is nevertheless confined by the subject matter of the case and reasonable

expectations of obtaining information that will aid resolution of the dispute." TEX.R. CIV. P. 192 cmt. 1; *see also CSX*, 124 S.W.3d at 152 ("Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution."); *Dillard*, 909 S.W.2d at 492 ("[A] discovery order that compels overly broad discovery 'well outside the bounds of proper discovery' is an abuse of discretion for which mandamus is the proper remedy.") (quoting *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex.1995)).

■ In determining whether the trial court abused its discretion, we are mindful that the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed. *Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 467 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (citing *Colonial Pipeline*, 968 S.W.2d at 941). Therefore, discovery is not limited only to information that will be admissible at trial. TEX.R. CIV. P. 192.3(a); *Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex.1993). However, a trial court must determine whether the requested discovery "appears reasonably calculated to lead to the discovery of admissible evidence." TEX.R. CIV. P. 192.3(a); *Eli Lilly*, 850 S.W.2d at 160. The scope of discovery is also limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. TEX.R. CIV. P. 192.4; *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex.1998).

■ Requests for production must be "reasonably tailored to include only matters relevant to the case." *Am. Optical*, 988 S.W.2d at 713; *see also CSX*, 124 S.W.3d at 152–53 ("A central consideration in determining overbreadth is whether the request could have been more narrowly

tailored to avoid including tenuous information and still obtain the necessary, pertinent information."). However, "[a] reasonably tailored discovery request is not overbroad merely because it may include some information of doubtful relevance." *Am. Optical*, 988 S.W.2d at 713. The Texas Supreme Court has specifically recognized that parties must be allowed some latitude in creating discovery requests. *Id.* (quoting *Texaco*, 898 S.W.2d at 815).

### Analysis

■■■ TSI complains that the requests for production of correspondence between TSI and histologists Khan, Griffith, and Rose and the request for production of documents referring to Kerry are overbroad. We disagree. TSI specifically named two of the three histologists as people Kerry contacted in violation of her agreement with TSI. Kerry is a party accused of breach of contract, misappropriation of trade secrets, common law misappropriation, tortious interference with contract, conversion, civil conspiracy and liability under the Theft Liability Act, acting either alone or through Full Staff.

Full Staff anticipates that the requested communications will reveal the nature of TSI's relationship with the three named histologists, the terms of their employment through TSI, and the nature of the communication between TSI and these individuals after TSI terminated Kerry's employment and will, therefore, "shed light on whether TSI may claim these individuals' identities and contact information as proprietary information." Information about whether or not these individuals are or were actually employed by TSI, how they came to be involved with TSI, and the nature of their interactions with TSI both before and after Kerry's alleged misdeeds is necessary for Full Staff to address TSI's claims that Kerry breached her confiden-

tiality and non-competition agreement, that Full Staff interfered with a contract, and that Kerry misappropriated trade secrets in the form of a client database. Information regarding Nolle's and TSI's representations about Kerry and Full Staff is also relevant to Full Staff's counterclaims of defamation and interference with a potential contract. This same reasoning applies to the terms of Kerry's employment, termination and subsequent relationship with TSI and Nolle. None of these discovery requests could have been more narrowly tailored and still have obtained the necessary information. *See CSX*, 124 S.W.3d at 153.

■■■ As TSI correctly points out, orders compelling production of documents from "an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad." *CSX*, 124 S.W.3d at 152. However, the cases in which the Texas Supreme Court has granted mandamus relief for overly broad requests for production in the past are clearly distinguishable from the present case. The *CSX* court points out several examples:

> [I]n *American Optical*, an asbestos-litigation case, the trial court ordered the defendant to turn over every document ever produced relating to asbestos. We held the order was overbroad, because "ordering a defendant to produce virtually all documents regarding its products for a fifty-year period is an abuse of ... discretion." In *Dillard*, we held the trial court's order was overly broad, because it required Dillard to produce every incident report filed between 1985 and 1990 in all 227 Dillard stores nationwide. The Court explained that "requests for document production may not be used simply to explore." Finally, in *Texaco*, the plaintiffs claimed injurious workplace exposure to benzene and requested all safety and toxicology docu-

ments written by the corporate safety director, including those documents regarding other employees' exposure and plants where the plaintiffs never worked. The request also extended into a time period during which the plaintiffs did not work with the company.

*CSX*, 124 S.W.3d at 152 (citing *Am. Optical*, 988 S.W.2d at 713; *Dillard*, 909 S.W.2d at 492; *Texaco*, 898 S.W.2d at 814) (internal citations omitted). In *CSX*, the Court held that "[a] request to identify all safety employees who worked for Relators over a 30–year period, even though [real party in interest] never worked for Relators or for their parent company for that length of time, qualifies as the kind of 'fishing expedition' this Court has repeatedly struck down." *Id.* at 153.

Here, the document requests are narrowly tailored enough to avoid including tenuous information while still obtaining the necessary, relevant information. *See id.* Full Staff has narrowed its requests for documents to the four people whose relationships with TSI it deemed to be central to several of the claims and defenses at issue. Two of those histologists were named by TSI in its answers to interrogatories and were the subject of very similar interrogatory requests by TSI. Full Staff's discovery requests are in sharp contrast to the requests that were struck down in *American Optical*, in which plaintiffs requested virtually every document American Optical had created on its products over a 50–year period. *Id.* at 152.

Furthermore, Full Staff's requests for correspondence between TSI or Nolle and the three histologists and for documents referring to Kerry are also inherently limited as to the relevant time period. The circumstances under which Kerry first made contact with Nolle and TSI, her hiring in 2004, her performance as an employee, the terms of her dismissal in 2005, her formation of Full Staff in 2006, and her actions leading up to the filing of the lawsuit in 2007 are all closely related to the claims in the suit. At most, Full Staff seeks four years' worth of documents, unlike *American Optical*, in which the requested documents spanned a 50–year period, or *CSX*, in which the requested documents spanned a 30–year period. *Id.* at 152–53.

The fact that the document requests spanning the entire length of TSI's relationship with Khan, Griffith, Rose, and Kerry might also include some information of doubtful relevance does not mean the requests for production were overly broad. *See Am. Optical*, 988 S.W.2d at 713. Therefore, the trial court did not abuse its discretion in compelling TSI to produce the documents asked for in Full Staff's requests for production 12–15. *See CSX*, 124 S.W.3d at 151.

We refuse to grant relief on the basis of TSI's objections to requests for production 12–15.

### Requests for Production 8–11 & Depositions of Donohoe and MSN

██ Full Staff anticipates that the documents and depositions relating to the Florida lawsuit will lead to evidence that is admissible to prove their defenses of unclean hands and estoppel, and their claims for attorney's fees and to establish that Nolle's customer lists and other information allegedly misappropriated by Kerry do not qualify for protection as trade secrets. TSI argues that the discovery into the Florida litigation sought by Full Staff is beyond the scope of discovery because it is not relevant to the present case or reasonably calculated to lead to the discovery of admissible evidence.

■ Full Staff argues that it is seeking documents and depositions relating to the Florida lawsuit to support its affirmative defenses of unclean hands and estoppel. "Unclean hands" is an affirmative defense available when the plaintiff is seeking an equitable remedy. *In re EGL Eagle Global Logistics, L.P.*, 89 S.W.3d 761, 766 (Tex. App.-Houston [1st Dist.] 2002, orig. proceeding). The alleged wrongful acts must have injured the person raising the defense. *Right to Life Advocates, Inc. v. Aaron Women's Clinic*, 737 S.W.2d 564, 571 (Tex.App.-Houston [14th Dist.] 1987, writ denied) (citing *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 410 (1960)). However, the information about the Florida lawsuit is not relevant to Full Staff's unclean hands defense because any alleged wrongful act harmed a third party, not Kerry. Full Staff argues that Kerry was harmed because she is now subject to litigation over the same information Nolle took from MSN, but this argument is tenuous at best. Strictly speaking, the present case is based on a completely separate employment relationship, governed by a separate contract containing confidentiality and non-competition clauses between Kerry and TSI. MSN settled all of its claims against Nolle and TSI in 2002 and has no interest in the current litigation.

Furthermore, information from the Florida lawsuit is not discoverable for purposes of Full Staff's equitable estoppel claim because it is not likely to lead to admissible evidence that Nolle knowingly made false representations to Kerry or that Kerry relied on those representations to her detriment. *See Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991) (holding that equitable estoppel requires party to prove false representation or concealment of material facts made with actual or constructive knowledge of those facts with intent that representation will be acted on and that party to whom

representation was made was without knowledge or means of knowledge and detrimentally relied on misrepresentation). Kerry first began working for Nolle in 2004—at least four years after the events that were the subject of the Florida lawsuit. Furthermore, the Florida case was dismissed for want of jurisdiction over Nolle, so nothing in that suit could have given Nolle knowledge of any of the substantive legal claims involved, even if they had been identical to those in the present case.

This same logic applies to Full Staff's claims that it also expects discovery to lead to evidence supporting its claims for attorney's fees under section 15.51(c) of the Texas Business & Commerce Code. Section 15.51(c) provides:

> If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the promisee, the court may award the promisor the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant.

Tex. Bus. & Com.Code Ann. § 15.51(c) (Vernon 2002). Full Staff argued in its reply to TSI's objections that Nolle is seeking to enforce an agreement that she knew to be unenforceable because of her previous liti-

gation with MSN. No court or fact-finder ever determined the enforceability of MSN's non-competition agreement with Nolle, so even if the clauses involved and the circumstances surrounding the creation and breach were substantially similar, the Florida litigation could not have put Nolle on notice that she was seeking to enforce an unenforceable agreement. *See id.*

Full Staff also argues that the requested discovery will allow it to determine whether TSI's client list and the other "trade secrets" Kerry allegedly misappropriated actually qualify as trade secrets. *See In re Bass,* 113 S.W.3d 735, 739 (Tex.2003) (holding that courts should examine six factors to determine if trade secret exists, including extent to which it is known by employees and other in business, amount of effort or money expended developing information, and ease or difficulty with which information could be properly acquired or duplicated by others). Full Staff argues that evidence that Nolle acquired the client list and other materials from her previous employer is relevant in determining the amount of effort Nolle expended in developing the information and the ease or difficulty with which the information could be acquired or duplicated by others. *See id.*

We cannot conclude that Full Staff's discovery requests regarding the Florida lawsuit are reasonably calculated to lead to the discovery of admissible evidence. *See* Tex.R. Civ. P. 192.3(a). No fact finder ever determined whether or not Nolle misappropriated trade secrets. Therefore, Full Staff is seeking discovery of claims that were dismissed under the terms of a confidential settlement agreement between Nolle and MSN. At most, Full Staff will only uncover MSN's allegations of wrongdoing against Nolle, which are not admissible to prove or disprove any of Nolle's

allegations of wrong-doing against Kerry and Full Staff. *See* Tex.R. Evid. 404(b) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

▮▮▮ Indeed, the information sought from the Florida lawsuit could only be used in an attempt to relitigate the issues between MSN and Nolle in the present case. Allowing Full Staff to discover a settlement agreement to introduce settled claims would generally undermine the enforceability of settlement agreements. Courts must enforce settlement agreements if they are to remain an effective means of resolving disputes and promoting judicial economy. *Flex–Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362, 1370 (Fed.Cir.2001). An attempt by an outside, interested party to relitigate settled issues undermines the finality and judicial economy of settlement agreements. *See Hallco Mfg. Co., Inc. v. Foster,* 256 F.3d 1290, 1294–95 (Fed.Cir. 2001); *Public Citizen v. Ins. Servs. Office, Inc.,* 824 S.W.2d 811, 813 (Tex.App.-Austin 1992, no writ).

Full Staff cites several authorities that it argues support its ability to conduct discovery into the litigation between Nolle and MSN. *See Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 850 (Tex.1992); *Allen v. Humphreys,* 559 S.W.2d 798, 803 (Tex.1977), *overruled on other grounds, Walker v. Packer,* 827 S.W.2d 833 (Tex. 1992); *In re Rogers,* 200 S.W.3d 318, 324 (Tex.App.-Dallas 2006, orig. proceeding); *In re Ernst & Young, L.L.P.,* No. 05–02–00352–CV, 2002 WL 779296, at *2 (Tex. App.-Dallas April 30, 2002, orig. proceeding) (not designated for publication); *Humphreys v. Caldwell,* 881 S.W.2d 940, 945 (Tex.App.-Corpus Christi 1994, orig. proceeding); *Methodist Home v. Marshall,* 830 S.W.2d 220, 222–23 (Tex.App.-Dallas 1992, orig. proceeding); *State Farm*

*Mut. Auto. Ins. Co. v. Engelke,* 824 S.W.2d 747, 751 (Tex.App.-Houston [1st Dist.] 1992, orig. proceeding). We find these authorities distinguishable. In many of the cases cited by Full Staff, the discovery requests involved general information about whether or not the opposing party had ever been sued on a similar claim, rather than seeking particular information such as the taking of trade secrets. *See Chrysler Corp.,* 841 S.W.2d at 850; *In re Ernst & Young,* 2002 WL 779296, at *2; *Caldwell,* 881 S.W.2d at 945; *Methodist Home,* 830 S.W.2d at 222–23; *Engelke,* 824 S.W.2d at 751. When discovery of material related to other lawsuits and complaints was allowed, the information sought had a direct, material connection to the instant litigation. *See Allen,* 559 S.W.2d at 803–04 (holding that discovery information relating to previous lawsuits and complaints was allowed because it was "material to the issue of causation" because party could establish pattern of disease and because that information was "unavailable from any other source").

Another case cited by Full Staff held that a party cannot obtain production of documents for its current lawsuit without regard to the limitations imposed in other lawsuits. *See In re Rogers,* 200 S.W.3d at 324 (holding that trial court abused its discretion in compelling production of documents from another lawsuit that were subject to confidentiality agreement or protective orders). Here, Full Staff is seeking documents from a lawsuit in which all claims were dismissed pursuant to a confidential settlement agreement. As discussed previously, settlement agreements protect parties from the relitigation of the settled claims. *See Hallco II,* 256 F.3d at 1294–95; *Public Citizen,* 824 S.W.2d at 813.

Therefore, we hold that the trial court abused its discretion in ordering TSI to produce the documents in Full Staff's requests for production 8–11 and for ordering the depositions of Donohoe and MSN. *See Colonial Pipeline,* 968 S.W.2d at 941. A discovery order compelling discovery that is well outside the bounds of proper discovery is an abuse of discovery for which the proper remedy is mandamus relief. *Dillard,* 909 S.W.2d at 492 (quoting *Texaco,* 898 S.W.2d at 815).

### Conclusion

We conditionally grant TSI's request for mandamus relief as it relates to requests for production 8–11 and the depositions of Donohoe and MSN. The writ will issue only if the trial court fails to amend its order appropriately. We deny TSI's request for mandamus relief as it relates to requests for production 12–15. All pending motions are overruled as moot.