

**IN THE
TENTH COURT OF APPEALS**

**No. 10-21-00305-CV**

**IN RE PILGRIM'S PRIDE CORPORATION,
CHRISTOPHER BENTLEY, AND KYLE MARTIN**

**Original Proceeding**

**From the 170th District Court
McLennan County, Texas
Trial Court No. 2021-1030-4**

## MEMORANDUM OPINION

In this original proceeding, Relators Pilgrim's Pride Corporation (Pilgrim's Pride), Christopher Bentley (Bentley), and Kyle Martin (Martin) have filed a petition seeking mandamus relief from the trial court's October 21, 2021 discovery order. We will conditionally grant the petition in part and deny it in part.

### Factual and Procedural Background

Jonathan Barrett died, and Daniel Kendall and Brandon Lawler both suffered serious injuries, when a ceiling panel on which they were standing collapsed beneath

them at Pilgrim's Pride's poultry plant in Waco, Texas, on or about January 26, 2021. Thereafter, in April 2021, Daniel Kendall (Kendall) and his wife Lauren (together, the Kendalls) took a Rule 202 deposition of Bentley, the head of engineering at the Pilgrim's Pride plant. *See generally* TEX. R. CIV. P. 202. The Kendalls subsequently filed a negligence suit against Pilgrim's Pride, Bentley, and Martin, the complex manager at the Pilgrim's Pride plant. The Kendalls later amended their pleadings to add NBMC, Inc. (NBMC) as a defendant.

The Kendalls made the following allegations in their live pleading at the time of the trial court's complained-of ruling: Pilgrim's Pride decided to have some renovations done at its Waco plant. Pilgrim's Pride had a company policy prohibiting the use of a general contractor for projects at the plant; instead, Pilgrim's Pride took on the tasks normally assigned to a general contractor. Pilgrim's Pride assigned Bentley as the "Project Engineer" for this renovation project; therefore, Bentley assumed the duties normally undertaken by a general contractor's superintendent at a renovation project.

The Kendalls alleged that Pilgrim's Pride contracted with Baker Refrigeration Systems Inc. (Baker Refrigeration) to perform the refrigeration portion of the renovation project. The Baker Refrigeration crew, of which Kendall was a member, was assigned to work in an area above the ceiling of a large storage room. The storage room ceiling panels served as the floor for the Baker Refrigeration crew as they worked. The Kendalls alleged that Pilgrim's Pride also contracted with NBMC to perform the demolition of equipment, the concrete work, and the replacement of walls and ceilings for the renovation project.

Before the ceiling panel collapsed, NBMC performed demolition work in the Baker Refrigeration crew's work area above the ceiling of the storage room.

The Kendalls alleged that the Baker Refrigeration crew had been working for several days at the plant in the designated work area before the ceiling panel collapsed. The day before the collapse, Bentley was in the storage room below the area where the Baker Refrigeration crew was working when he saw the storage room ceiling "flexing and bowing." Bentley therefore knew that the storage room ceiling panels that served as the floor for the Baker Refrigeration crew as they worked were dangerous. Bentley, however, did not notify the Baker Refrigeration crew of the dangerous condition, did not lock the gate to the area, and did not put up a caution sign or tape. Instead, without notifying others at Pilgrim's Pride and without completing a feasibility analysis, Bentley specifically approved a plan to use a scissor lift as a brace to support the ceiling panels so that the Baker Refrigeration crew could continue to work. But the collapse occurred before any such plan was implemented.

The Kendalls alleged that as part of the renovation project, Pilgrim's Pride had implemented a procedure requiring Baker Refrigeration to apply for a "hot works permit" whenever it needed to engage in welding, cutting, or grinding inside the building. On the morning of the day that the ceiling panel collapsed, Pilgrim's Pride issued a "hot works permit" authorizing the Baker Refrigeration crew to cut pipe that needed to be removed in the designated work area above the storage room ceiling. Martin also came into the work area that morning and observed the Baker Refrigeration crew working in the designated work area above the storage room ceiling. Martin did

not warn the crew of the dangerous condition.  The Kendalls alleged that while the Baker Refrigeration crew was then working on the pipes, a ceiling panel collapsed and fell out from under Kendall's feet, creating a hole where the panel had been.  Three workers fell through the hole in the ceiling and onto the concrete floor of the storage room below.  As a result, Kendall was severely injured, and his supervisor was killed.[1]

Pilgrim's Pride, Bentley, and Martin jointly answered the Kendalls' pleading with a general denial of the Kendalls' allegations.  Pilgrim's Pride, Bentley, and Martin further asserted that the Kendalls' factual allegations produced "an inaccurate picture of the incident" and inaccurately represented Bentley's Rule 202 deposition testimony. Accordingly, Pilgrim's Pride, Bentley, and Martin put forward their own factual allegations in their answer as follows:  The incident was a "tragic accident" that occurred in the attic space above where the "Waco Line 4 Freezer Replacement Project" was taking place.  Before the bidding process for the renovation began, Baker Refrigeration inspected the facility.  Furthermore, after being selected to complete the project, Baker Refrigeration inspected the jobsite a second time before beginning its work.

Pilgrim's Pride, Bentley, and Martin alleged that a few days after the work began, and the day before the ceiling panel collapsed, Bentley noticed that "the ceiling above Line 4 (which also served as the attic floor) was bowing and flexing to an unacceptable extent" because several of Baker Refrigeration's employees/subcontractors were

---

[1] Shortly after the Kendalls filed suit, Brandon Lawler and his wife Kimberly Stone filed a petition in intervention asserting negligence claims against Pilgrim's Pride, Bentley, Martin, and Baker Refrigeration. Additionally, Summer Barrett, individually and as the surviving spouse and representative of the estate of Jonathan Barrett, filed a petition in intervention asserting negligence claims against Pilgrim's Pride, Bentley, and Martin.

concentrated in a relatively small area where they were removing old, heavy piping/valves. Bentley thereafter notified Jonathan Barrett (Barrett), Baker Refrigeration's supervisor, that the work needed to stop because the excessive weight that the Baker Refrigeration workers were placing on the ceiling panels while performing their jobs was creating an unsafe situation. Bentley further suggested that a safer, alternate way for the Baker Refrigeration employees/subcontractors to complete the removal of the pipes/valves would be to take out the whole ceiling and use scissor lifts and forklifts to remove the pipes. But Baker Refrigeration rejected the idea. Barrett told Bentley that he felt like it would be unsafe to use scissor lifts in that way.

Pilgrim's Pride, Bentley, and Martin alleged that Baker Refrigeration instead developed its own plan. After discussing the situation with his boss, Barrett told Bentley that, before the workers would continue working, Baker Refrigeration was going to use scissor lifts to "crib up" the area under the ceiling panels where the Baker Refrigeration employees/subcontractors were removing the pipes. Bentley approved the plan because he felt like Baker Refrigeration was the expert, not him. Baker Refrigeration also informed others of the plan because NBMC employees showed Bentley the area where Barrett had shown them that the scissor lifts would be located. The next morning, however, Barrett ordered his workers to begin working before the arrival and implementation of the scissor lifts, in violation of the plan that he had devised. Based on the foregoing factual allegations, Pilgrim's Pride, Bentley, and Martin further moved to designate Baker Refrigeration and Barrett as responsible third parties.

On June 29, 2021, the Kendalls served their first requests for production of documents and first sets of interrogatories on Pilgrim's Pride, Bentley, and Martin. Subsequently, Pilgrim's Pride, Bentley, and Martin each timely provided their objections and responses to the Kendalls' first requests for production of documents. On September 30, 2021, Pilgrim's Pride, Bentley, and Martin then filed a motion for protection from the Kendalls' discovery requests, and on October 1, 2021, the Kendalls filed a motion to compel Pilgrim's Pride to respond to their Requests for Production Nos. 3, 12, 33, 43, and 55. The Kendalls later supplemented their motion to compel. Pilgrim's Pride, Bentley, and Martin also jointly filed a response to the Kendalls' motion to compel and a reply in support of their own motion for protection.

On October 15, 2021, the trial court held a hearing on Pilgrim's Pride's, Bentley's, and Martin's motion for protection and on the Kendalls' motion to compel. At the end of the hearing, the trial court stated: "I will grant [the Kendalls'] motion to compel in full."

On October 21, 2021, the trial court then signed its "Order on Plaintiffs' Motion to Compel Defendant Pilgrim's Pride Corporation to Produce Documents Responsive to Plaintiffs' First Requests for Production Nos. 3, 12, 33, 43, and 55." In the order, the trial court granted the Kendalls' motion to compel Pilgrim's Pride to respond to their Requests for Production Nos. 3, 12, 33, 43, and 55 and overruled Pilgrim's Pride's objections to those discovery requests. The trial court then ordered Pilgrim's Pride to provide all responsive documents and further answers or supplementations to the Kendalls' Requests for Production Nos. 3, 12, 33, 43, and 55 within thirty days of the date of the

order.[2]  Finally, the trial court denied Pilgrim's Pride's, Bentley's, and Martin's motion for protection from the Kendalls' discovery requests.

## Discussion

Mandamus is an extraordinary remedy that is available only when (1) the trial court clearly abused its discretion and (2) the relator lacks an adequate remedy by appeal. *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 247 (Tex. 2021) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36, 138 (Tex. 2004) (orig. proceeding)).

### A.    Clear Abuse of Discretion

We begin with whether the trial court clearly abused its discretion in denying Pilgrim's Pride's, Bentley's, and Martin's motion for protection from the Kendalls' discovery requests.  Rule of Civil Procedure 192.6(a) provides:  "A person from whom discovery is sought, and any other person affected by the discovery request, may move *within the time permitted for response to the discovery request* for an order protecting that person from the discovery sought."  TEX. R. CIV. P. 192.6(a) (emphasis added).  Pilgrim's Pride, Bentley, and Martin did not file their motion for protection from the Kendalls' discovery requests until after the time permitted to respond to the Kendalls' first requests for production of documents and first sets of interrogatories had expired.  The trial court, therefore, did not clearly abuse its discretion in denying Pilgrim's Pride's, Bentley's, and Martin's motion for protection.  *See id.*

---

[2] We have stayed the trial court's October 21, 2021 order, pending further order of this Court.

We next address whether the trial court clearly abused its discretion in granting the Kendalls' motion to compel Pilgrim's Pride to respond to their Requests for Production Nos. 3, 12, 33, 43, and 55 and in overruling Pilgrim's Pride's objections to those discovery requests.

"'The trial court abuses its discretion by ordering discovery that exceeds that permitted by the rules of procedure.'" *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding) (quoting *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam)). Rule of Civil Procedure 192.3(a) provides that the parties to a lawsuit may generally obtain discovery of information that "is not privileged and is relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a). "Such evidence is discoverable even if it would not be admissible at trial so long as it 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *USAA Gen. Indem. Co.*, 624 S.W.3d at 787–78 (quoting TEX. R. CIV. P. 192.3(a)). Rule of Civil Procedure 192.4 provides, however, that the trial court "should" limit otherwise permissible discovery if:

    (a)   the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; or

    (b)   the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

TEX. R. CIV. P. 192.4. Rule of Civil Procedure 192.4 imposes a proportionality standard that requires "a case-by-case balancing of jurisprudential considerations." *K & L Auto*

*Crushers*, 627 S.W.3d at 253 (quoting *In re State Farm Lloyds*, 520 S.W.3d 595, 599 (Tex. 2017) (orig. proceeding)).

Pilgrim's Pride challenges the propriety of the Kendalls' Requests for Production Nos. 3, 12, 33, 43, and 55 on both relevance and proportionality grounds.

**1.  Relevance**

We first address Pilgrim's Pride's contention that the Kendalls' Requests for Production Nos. 3, 12, 33, 43, and 55 are overbroad and seek irrelevant documentation.

> . . . Although [the Rules of Civil Procedure] must be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial," *Axelson*, [*Inc. v. McIlhany*,] 798 S.W.2d [550,] 553 [(Tex. 1990) (orig. proceeding)], "even these liberal bounds have limits, and discovery requests must not be overbroad." *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam). In essence, an overbroad discovery request is one that seeks irrelevant information. *In re Allstate Cnty. Mut. Ins. Co.*, 227 S.W.3d 667, 670 (Tex. 2007) (orig. proceeding) (per curiam). But a request is not overbroad simply because it "may call for some information of doubtful relevance," *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (per curiam), and "the sheer volume of a discovery request does not in itself render the request irrelevant or overbroad as a matter of law," *In re Alford Chevrolet– Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999) (orig. proceeding).

*K & L Auto Crushers*, 627 S.W.3d at 251–52.  Whether a request for discovery is overbroad is distinct from whether it is burdensome or harassing.  *Allstate*, 227 S.W.3d at 670.

> Instead, discovery requests and orders are overbroad if they are not properly "tailored with regard to time, place, or subject matter," *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2016) [(orig. proceeding)] (per curiam), or otherwise require production of information that is not reasonably calculated to lead to the discovery of admissible evidence, *Nat'l Lloyds*, 449 S.W.3d at 490.

*K & L Auto Crushers*, 627 S.W.3d at 252 (footnote omitted).  "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored

to avoid including tenuous information and still obtain the necessary, pertinent information."  *CSX Corp.*, 124 S.W.3d at 153.

### a.    Requests for Production Nos. 3 and 33

The Kendalls' Request for Production No. 3 states:  "Produce all documents reflecting all incidents, including but not limited to any near-miss reports, at the Worksite for the sixty (60) days before and including the date of the Incident."  Similarly, the Kendalls' Request for Production No. 33 provides:  "Produce any Documents that reflect any concerns and/or complaints received by You regarding safety deficiencies and/or operation of Worksite from January 1, 2016 through the date of the Incident."  The term "Worksite" is defined as "the building where the Waco Line 4 Freezer Replacement project was being conducted at the Pilgrim's Pride Corporation located at 2500 E Lake Shore Drive, Waco, Texas, where the incident resulting in the bodily injury of Daniel Kendall" occurred.

Pilgrim's Pride contends that, regarding these discovery requests, because of the definition of the term "Worksite," the Kendalls are seeking information that encompasses the entire poultry processing plant.  Pilgrim's Pride further points out that, regarding Request for Production No. 33 specifically, the Kendalls are seeking discovery that covers a period spanning more than five years before the incident involving Kendall occurred. Pilgrim's Pride asserts, however, that Baker Refrigeration was working on the Waco Line 4 Freezer Replacement Project as an independent contractor, not as an employee; that the project involved only a small area of the attic located above Line 4, where the routine operation of the poultry processing plant had been shut down; and that the project had

begun only a few days before the incident involving Kendall occurred. Pilgrim's Pride argues that the Kendalls' Requests for Production Nos. 3 and 33 are therefore fishing expeditions. *See generally Alford Chevrolet–Geo*, 997 S.W.2d at 181 ("[D]iscovery may not be used as a fishing expedition or to impose unreasonable discovery expenses on the opposing party.").

Pilgrim's Pride also argues that a premises owner has a very limited duty to an employee of an independent contractor. The Texas Supreme Court stated in *General Electric Company v. Moritz* that a premises owner does not owe a duty to ensure that independent contractors perform their work in a safe manner. 257 S.W.3d 211, 214 (Tex. 2008). The court further stated:

> Generally, a landowner is liable to employees of an independent contractor only for claims arising from a pre-existing defect rather than from the contractor's work, and then only if the pre-existing defect was concealed: "With respect to existing defects, an owner or occupier has a duty to inspect the premises and warn of *concealed* hazards the owner knows or should have known about."

*Id.* at 215 (footnote omitted) (quoting *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004) (emphasis added)). Pilgrim's Pride then states in its petition that it "has already stipulated that it had notice of the condition of the [ceiling panels] in the exact area where the accident occurred, and that it advised Baker Refrigeration of same, prior to the accident." Pilgrim's Pride, relying on *In re USAA General Indemnity Company*, argues that there is therefore "no need to conduct discovery on what Pilgrim's Pride *should have* known when Pilgrim's Pride admits that it *actually* knew." *See generally* 624 S.W.3d at 793 ("Considering USAA's coverage concessions and the narrow scope of the 'car crash'

issues in dispute, we hold that some, but not all, of Wearden's noticed deposition topics exceed the rules' permissible scope.").

In many instances, "evidence of other accidents, near accidents, or related similar events is probative evidence in Texas courts." *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 148 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). But before such evidence may be admitted, an adequate predicate must be established. *Id.* The plaintiff must establish: "(1) a predicate of similar or reasonably similar conditions; (2) connection of the conditions in some special way; or (3) that the incidents occurred by means of the same instrumentality." *Id.* We accordingly conclude that, at a minimum, the Kendalls' Requests for Production Nos. 3 and 33 are not properly tailored with regard to subject matter. *See K & L Auto Crushers*, 627 S.W.3d at 252 ("[D]iscovery requests and orders are overbroad if they are not properly 'tailored with regard to time, place, or subject matter.'" (quoting *Nat'l Lloyds*, 507 S.W.3d at 226)). Even though the scope of discovery is much broader than the scope of admissible evidence, *In re Exmark Mfg. Co.*, 299 S.W.3d 519, 528 (Tex. App.—Corpus Christi–Edinburg 2009, orig. proceeding), the Kendalls are not entitled to discover documents reflecting incidents and concerns regarding Pilgrim's Pride's *entire* poultry processing operation. *See, e.g.*, *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (per curiam) (where principal issue was whether defendants were grossly negligent in exposing plaintiffs' decedents to asbestos, benzene, and other such toxic substances, and where plaintiffs wanted to prove a general "corporate strategy to ignore safety law," court explained that "[w]hile plaintiffs are entitled to discover evidence of defendants' safety policies and practices as they relate to

the circumstances involved in their allegations, a request for all documents authored by [the corporate safety director] on the subject of safety, without limitation as to time, place or subject matter, is overbroad").

The Kendalls argue, in part, that they did not arbitrarily choose to define "Worksite" as the entire building but that they instead defined it as it is defined in the contract between Pilgrim's Pride and Baker Refrigeration. The Kendalls further assert that defining "Worksite" as the entire building "simply reflects the actual scope of the work being done when the [ceiling panel] collapsed." To support their assertion, the Kendalls point to Bentley's deposition, in which he stated: "So theoretically, when they're in the attic area dealing with pipes, [Baker Refrigeration's work area] actually covers the majority of the section of the attic, as well as up on the roof of the building where they're running their new ammonia pipes." But even though these arguments may explain why the Kendalls' Requests for Production Nos. 3 and 33 are properly tailored with regard to *place*, these arguments do not establish how the Kendalls' Requests for Production Nos. 3 and 33 are properly tailored with regard to *subject matter* considering that Baker Refrigeration was an independent contractor that was not involved in the poultry processing operation of the plant.

The Kendalls' Requests for Production Nos. 3 and 33 are therefore overbroad, and the trial court clearly abused its discretion to the extent that it granted the Kendalls' motion to compel Pilgrim's Pride to produce documents responsive to those discovery requests.

### b. Request for Production No. 12

The Kendalls' Request for Production No. 12 states: "Produce any Documents reflecting the job descriptions and identities of the workers at the Worksite, including Defendant's employees, agents and/or contractors at the Worksite, on the date of the Incident."

Pilgrim's Pride again contends regarding this discovery request that because of the definition of the term "Worksite," the Kendalls are improperly seeking information that encompasses the entire poultry processing plant. More specifically, Pilgrim's Pride argues that the job descriptions and identities of the more than 545 Pilgrim's Pride employees are irrelevant considering that Baker Refrigeration was an independent contractor that was hired only to conduct a freezer remodel and that Pilgrim's Pride's employees were not involved in the work being performed by Baker Refrigeration at the time of the incident that injured Kendall.

In support of its argument, Pilgrim's Pride relies on *In re Pioneer Natural Resources USA, Inc.*, in which the defendant company challenged a discovery request seeking "production of the hiring, disciplinary, and employment files of all employees who performed work at the accident site at any time on the day of the accident." No. 05-20-00536-CV, 2020 WL 5107284, at *1–2 (Tex. App.—Dallas Aug. 31, 2020, orig. proceeding) (mem. op.). The defendant company argued that the discovery request "exceed[ed] the bounds of discovery authorized by the rules of procedure" because the discovery request sought "information concerning employees who were not present at the time of the accident and did not participate in the events leading up to the accident." *Id.* at *3. The

Dallas Court of Appeals agreed, holding that the trial court abused its discretion in ordering the defendant company to produce documents responsive to the discovery request. *Id.* The court reasoned that the "only connection these employees had to the accident is that they arrived at the scene in the accident's aftermath" and that the discovery request "could have easily been more narrowly tailored to include only employees who had some conceivable role in the injury-causing events." *Id.*

The Kendalls respond, in part, that Pilgrim's Pride's emphasis on the number of people it employs is a red herring. The Kendalls point to the fact that "'the sheer volume of a discovery request does not in itself render the request irrelevant or overbroad as a matter of law.'" *K & L Auto Crushers*, 627 S.W.3d at 251–52 (quoting *Alford Chevrolet–Geo*, 997 S.W.2d at 180 n.1). Similar to *In re Pioneer Natural Resources USA, Inc.*, however, the Kendalls' Request for Production No. 12 applies to many people who would have no knowledge of any relevant facts regarding the circumstances involved in the Kendalls' allegations, including many who simply arrived at the scene in the incident's aftermath. *See* 2020 WL 5107284, at *3. The discovery request could have been more narrowly tailored to apply to only those employees, agents and/or contractors at the Worksite, on the date of the incident, before the incident occurred. *See CSX Corp.*, 124 S.W.3d at 153 ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information.").

We therefore conclude that the Kendalls' Request for Production No. 12 is overbroad and that the trial court clearly abused its discretion to the extent that it granted

the Kendalls' motion to compel Pilgrim's Pride to produce documents responsive to the discovery request.

### c. Request for Production No. 43

The Kendalls' Request for Production No. 43 states:

Produce any correspondence, emails, text messages or other Documents reflecting communication between Defendant and the following entities (specifically including any employees, officers, or representatives of same) concerning Plaintiff Daniel Kendall, the Incident, the Worksite, and/or any safety issues or matters related to same:

    a. Baker Refrigeration;
    b. Abacus Engineering Inc;
    c. Midland Industrial; and
    d. NBMC, Inc.

Pilgrim's Pride again contends regarding this discovery request that because of the definition of the term "Worksite," the Kendalls are improperly seeking information that encompasses the entire poultry processing plant. Pilgrim's Pride also argues that this discovery request is overbroad on its face because it contains no temporal limits.

The Kendalls respond that this is a routine request for communications between Pilgrim's Pride and the contractors involved in the project. Regarding the lack of temporal limits, specifically, the Kendalls assert that this discovery request is inherently limited in time in that it is necessarily limited to the period when each of the contractors worked at the Pilgrim's Pride plant. *See generally In re Nolle*, 265 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding) (upholding discovery requests that were inherently limited as to relevant time period). The Kendalls further contend that this discovery request is important to clarify the expectations between Pilgrim's Pride

and its contractors, especially the amount of control that Pilgrim's Pride exercised over its contractors.

We conclude, however, that the discovery request is not properly tailored with regard to time or subject matter. The discovery request encompasses communications beyond those related to this renovation project and the circumstances involved in the Kendalls' allegations. Instead, the discovery request includes communications related to other projects, if any, in which these contractors have participated at the poultry processing plant. The Kendalls' Request for Production No. 43 is therefore overbroad, and the trial court clearly abused its discretion to the extent that it granted the Kendalls' motion to compel Pilgrim's Pride to produce documents responsive to the discovery request.

### d. Request for Production No. 55

Finally, the Kendalls' Request for Production No. 55 states: "Produce all documents pertaining to or referencing all repairs or work or modifications to any portion of the Floor including but not limited to work orders, invoices, receipts." The term "Floor" is defined as "the floor of room where Plaintiff was located at the time the fatal collapse occurred."

Pilgrim's Pride's contention regarding this discovery request is similar to its argument with regard to the Kendalls' Requests for Production Nos. 3 and 33. Pilgrim's Pride contends in its petition that

> this request is not reasonably calculated to lead to the discovery of admissible evidence, when Pilgrim's Pride has already stipulated that it knew of the [ceiling panels'] condition in the exact area where the accident

occurred, communicated it to Baker Refrigeration and its onsite supervisor, Barrett, and that Baker Refrigeration was responsible for developing a course of action to remedy the [ceiling panels'] condition, and then implementing said plan.

Pilgrim's Pride further asserts in its reply to the Kendalls' response to its petition that there is "no need to conduct discovery on what Pilgrim's Pride *should have* known when Pilgrim's Pride admits that it *actually* knew about the floor."

As stated above, the Texas Supreme Court explained in *General Electric Company v. Moritz*:

Generally, a landowner is liable to employees of an independent contractor only for claims arising from a pre-existing defect rather than from the contractor's work, and then only if the pre-existing defect was concealed: "With respect to existing defects, an owner or occupier has a duty to inspect the premises and warn of *concealed* hazards the owner knows or should have known about."

257 S.W.3d at 215 (footnote omitted) (quoting *Shell Oil Co.*, 138 S.W.3d at 295 (emphasis added)). But there are some situations when an otherwise adequate warning is insufficient to discharge the landowner's duty to make the premises reasonably safe. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 204 (Tex. 2015). One such exception is the necessary-use exception, *i.e.*, "when the invitee necessarily must use the unreasonably dangerous premises, and despite the invitee's awareness and appreciation of the dangers, the invitee is incapable of taking precautions that will adequately reduce the risk." *Id.*

The Kendalls have also sued NBMC, alleging that before the ceiling panel collapsed, NBMC negligently performed demolition work in the Baker Refrigeration crew's work area above the ceiling of the storage room. The trial court could have reasonably concluded that the Kendalls' Request for Production No. 55 was reasonably

calculated to lead to the discovery of admissible evidence regarding these issues. We therefore conclude that the Kendalls' Request for Production No. 55 is not overbroad.

### 2. Proportionality

Having concluded that the Kendalls' Request for Production No. 55 is not overbroad, we next address Pilgrim's Pride's proportionality concerns.

As explained above, Rule of Civil Procedure 192.4 imposes a proportionality standard that requires "a case-by-case balancing of jurisprudential considerations." *K & L Auto Crushers*, 627 S.W.3d at 253 (quoting *State Farm Lloyds*, 520 S.W.3d at 599). The Texas Supreme Court has said, however, that "parties 'must "support [such] proportionality complaints with evidence"' and may not rely on conclusory allegations." *See USAA Gen. Indem. Co.*, 624 S.W.3d at 792 (quoting *K & L Auto Crushers*, 627 S.W.3d at 253 (quoting *State Farm Lloyds*, 520 S.W.3d at 614)). The Kendalls argue that Pilgrim's Pride has not supported its proportionality concerns with sufficient evidence. We agree.

Pilgrim's Pride argues generally that the Kendalls already have the benefit of a significant amount of discovery, including Bentley's Rule 202 deposition. Pilgrim's Pride further asserts in its petition that it "has already stipulated that it had notice of the condition of the [ceiling panels] in the exact area where the accident occurred, and that it advised Baker Refrigeration of same, prior to the accident." Pilgrim's Pride also attached the "Declaration of Kyle Martin" to its motion for protection from the Kendalls' discovery requests. Martin stated in his Declaration that the "Pilgrim's Pride facility has one building with a total of 309,000 square feet, which is just over seven acres." Martin further stated, "There are 545 employees that work for Pilgrim's Pride at this location."

But, as pointed out by the Kendalls, Pilgrim's Pride did not connect the facts in Martin's Declaration to the burdensomeness of responding to the Kendalls' discovery requests. *See In re Energas Co.*, 63 S.W.3d 50, 55 (Tex. App.—Amarillo 2001, orig. proceeding) ("The fact that a discovery request is burdensome is not enough to justify protection, 'it is only *undue* burden that warrants nonproduction.'" (quoting *ISK Biotech Corp. v. Lindsay*, 933 S.W.2d 565, 568 (Tex. App.—Houston [1st Dist.] 1996, orig. proceeding)). Accordingly, we conclude that the trial court did not clearly abuse its discretion to the extent that it granted the Kendalls' motion to compel Pilgrim's Pride to produce documents responsive to the Kendalls' Request for Production No. 55.

## B. No Adequate Remedy by Appeal

We have held that the trial court clearly abused its discretion to the extent that it granted the Kendalls' motion to compel Pilgrim's Pride to produce documents responsive to the Kendalls' Requests for Production Nos. 3, 12, 33, and 43. To determine if mandamus is available to Pilgrim's Pride, we must then determine whether Pilgrim's Pride lacks an adequate remedy by appeal. *See K & L Auto Crushers*, 627 S.W.3d at 247. A trial court order that allows discovery not permitted under procedural rules is subject to mandamus relief because "parties lack an adequate appellate remedy from orders compelling discovery beyond what the rules allow." *In re Millwork*, 631 S.W.3d 706, 714 (Tex. 2021) (orig. proceeding) (per curiam). Accordingly, we conclude that Pilgrim's Pride lacks an adequate remedy by appeal.

**Conclusion**

We lift our stay of the trial court's October 21, 2021 discovery order and conditionally grant in part the petition for writ of mandamus filed by Pilgrim's Pride, Bentley, and Martin. A writ will issue only if the trial court fails to vacate those portions of the October 21, 2021 order granting the Kendalls' motion to compel Pilgrim's Pride to produce documents responsive to the Kendalls' Requests for Production Nos. 3, 12, 33, and 43, and to notify this Court in writing that it has done so within twenty-one days of the date of this opinion. We otherwise deny the mandamus petition.[3]


MATT JOHNSON
Justice


Before Chief Justice Gray,
        Justice Johnson, and
        Justice Smith
Petition granted in part and denied in part
Opinion delivered and filed August 3, 2022
[OT06]



---

[3] On January 28, 2022, Pilgrim's Pride, Bentley, and Martin filed a "Motion for Leave to File Supplemental Brief in Support of Petition for Writ of Mandamus." The motion is granted to the extent that the supplemental brief has been filed. However, we are prohibited from issuing advisory opinions. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).